# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDWARD HALL BELL, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. PJM-16-1990 |
| FRANK B. BISHOP, JR., *et al.*, | * | |
| Respondents. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending is Petitioner Edward Hall Bell's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner challenges the validity of his 2004 conviction in the Circuit Court for Prince George's County, Maryland for first-degree murder, attempted first-degree murder, and two counts of use of a handgun in a crime of violence. *Id.* at 1, 2. Respondents filed an Answer, arguing Bell's petition is time-barred, which they supplemented at direction of the Court, further seeking dismissal based on the merits. ECF Nos. 13, 25. Bell opposes dismissal of the Petition. ECF Nos. 16, 35. After reviewing the submissions, the Court concludes there is no need for an evidentiary hearing. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; *see also* 28 U.S.C. § 2254(e)(2). For reasons set forth herein, the Petition is DENIED. A Certificate of Appealability shall not issue.

### BACKGROUND

On September 7, 2004, Bell was indicted in the Circuit Court for Prince George's County for first-degree murder, attempted first-degree murder, and several related counts arising from events that took place at a liquor store on March 14, 2004. ECF No. 25-1 at 6. In October 2004, a jury convicted Bell of first-degree murder, attempted first-degree murder, and two counts of use

of a handgun in a crime of violence. *Id.* at 9. On January 28, 2005, Bell was sentenced to life imprisonment without the possibility of parole, plus forty years. ECF No. 25-6 at 19–20.

After his sentencing, Bell mounted a series of challenges to his conviction. On direct appeal, the Court of Special Appeals corrected an error on the docket regarding sentencing but otherwise affirmed Bell's conviction. ECF No. 25-1 at 71. On July 24, 2007, Bell filed a state petition for post-conviction relief. *Id.* at 72. In his petition, Bell alleged that trial counsel was ineffective for: (1) failing to object to Bell's absence during certain parts of his trial, specifically bench conferences and the discussion of jury notes; (2) failing to object to the State's service of a notice of intent to seek life without parole on defense counsel but not Bell; and (3) failing to timely file a motion for modification or reduction of sentence. *Id.* at 75, 87. On January 11, 2011, the Circuit Court for Prince George's County held a hearing on Bell's post-conviction petition. ECF No. 25-7 at 1. During the hearing, Bell orally raised an additional ineffective assistance claim, arguing his counsel failed to request a transcript of grand jury testimony. *Id.* at 8. The Circuit Court orally denied relief as to Bell's ineffective assistance claims but granted Bell's request to file a belated motion for modification or reduction of sentence. *Id.* at 149–53. Bell then filed an application for leave to appeal the decision, which the Court of Special Appeals summarily denied. ECF No. 25-1 at 104–14.

On May 12, 2014, Bell filed a motion to correct an illegal sentence pursuant to Maryland Rule 4-345(a). ECF No. 25-1 at 115. Bell argued that the Circuit Court could not properly sentence him to life without parole due to the State's failure to serve written notice directly to Bell. *Id.* at 116. Further, Bell claimed the jury's verdict was "defective" based on a "lack of unanimity." *Id.* at 118. After the jury verdict was hearkened, Bell's counsel requested that the jury be polled. *Id.* at 117. Bell asserted that one of the 12 jurors was not polled, making it "impossible to know

2

if the jury was unanimous," and resulting in an invalid conviction and sentence. *Id.* at 119. The Circuit Court summarily denied the motion, and the Court of Special Appeals affirmed the denial. *Id.* at 125–27.

On June 7, 2016, Bell filed his federal Petition for a Writ of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2254. ECF No. 1. Bell raises the following grounds for relief: (1) counsel was ineffective because Bell was denied the right to be present at bench conferences and the reading of jury notes; (2) counsel was ineffective for failing to request the grand jury transcript; (3) the jury verdict was not unanimous based on a polling error; (4) counsel failed to investigate other suspects; and (5) the State did not turn over a firearms examination report. ECF No. 1 at 5–6. The latter two claims were never raised in state court. *Id.* Respondents moved to stay the case, asserting that a pending case before the Court of Appeals of Maryland could determine the timeliness of Bell's federal habeas petition. ECF No. 9 at 3. On September 30, 2016, the Court granted the stay. ECF No. 10.

After the Maryland Court of Appeals rendered its decision, Respondents filed an Answer in this case, arguing Bell's petition should be dismissed as time-barred. ECF No. 13 at 6–7. The Court then directed Respondents to supplement their Answer by addressing Bell's claims on the merits. ECF No. 17. Respondents filed a Supplemental Answer, arguing Bell's claims should be dismissed as time-barred, based on exhaustion, and on the merits. ECF No. 25 at 5.

With respect to exhaustion, Respondents argued Bell's claims that trial counsel failed to investigate other suspects and that the State failed to turn over a firearms examination report were unexhausted, as they were never raised in state court. In response, Bell moved for a stay and abeyance to attempt to reopen his state post-conviction proceedings and exhaust these claims. ECF No. 26 at 2. On March 19, 2019, the Court issued a Memorandum Opinion, finding the two claims

were procedurally defaulted rather than unexhausted and denying Bell's motion to stay. ECF No. 32 at 8. Bell has argued cause and prejudice exists to overcome his default of those claims and has replied to Respondents' Supplemental Answer on the merits. ECF Nos. 34, 45. Further, Bell has filed a second motion to stay based on a case pending before the Supreme Court of the United States. ECF No. 36.

## DISCUSSION

### I. Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal marks and citations omitted).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the § 2254(d)(1) "unreasonable application" analysis, a

4

"state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* (internal quotation marks omitted). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

## II. Analysis

### A. Timeliness

Respondents maintain their initial argument that Bell's entire petition should be dismissed

5

as time-barred. A one-year statute of limitations applies to habeas petitions in non-capital cases for a person convicted in state court. *See* 28 U.S.C. § 2244(d)(1). The one-year limitations period runs from the latest of four dates codified in § 2244(d)(1). In this case, the limitations period began on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). Importantly, however, the one-year period is tolled while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

On August 3, 2006, the Court of Special Appeals rendered its decision in Bell's direct appeal, and the court issued its mandate on September 5, 2006. ECF No. 25-1 at 12. When Bell did not file a petition for a writ of certiorari within 15 days of the court's mandate, Bell's judgment became final for purposes of direct review. *See* Md. Rule 8-302(a). Accordingly, on September 20, 2006, the limitations period began to run. On July 24, 2007, Bell filed his state post-conviction petition, 307 days after the start of the limitations period. ECF No. 25-1 at 72. His petition tolled the limitations period until May 2, 2014, when Bell's post-conviction proceedings and sentencing review concluded. *Id.* at 19.

Next, on May 12, 2014, Bell filed a motion to correct an illegal sentence. ECF No. 25-1 at 115. Bell's motion to correct an illegal sentence included one of the claims he now raises on federal habeas review—that the jury's verdict was a nullity due to a polling error. *Id.* at 117. Respondents contend that "whether Bell's underlying petition is time-barred depends on whether proceedings related to his motion to correct an illegal sentence tolled the limitations period of Section 2244(d)." ECF No. 13 ¶ 9. Thus, the timeliness of Bell's petition turns on whether his motion to correct an illegal sentence is a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment" within the meaning of Section

6

2244(d)(2).

The Supreme Court has explained that "'collateral review' of a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." *Wall v. Kholi*, 562 U.S. 545, 553 (2011). Relevant to the Supreme Court's analysis, Bell's motion to correct an illegal sentence is a proceeding that "is not part of the direct review process" and "undoubtedly calls for 'review' of the sentence." *Mitchell v. Green*, 922 F.3d 187, 195 (4th Cir. 2019) (quoting *Kholi*, 562 U.S. at 555); *see also Colvin v. State*, 450 Md. 718, 725, 728 (2016) (contrasting a motion to correct an illegal sentence with a direct appeal). Thus, Bell's motion constitutes "collateral review." *See Mitchell*, 922 F.3d at 198 (holding a motion to reduce sentence under Maryland Rule 4-345 is "collateral review" for tolling purposes).

The Court must next determine whether Bell's motion to correct an illegal sentence was "properly filed." An application for collateral review "is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). "Filing rules include 'the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.'" *Harris v. Dir., Va. Dep't of Corr.*, 282 F. App'x 239, 241 (4th Cir. 2008) (quoting *Artuz*, 531 U.S. at 8). In contrast, "procedural bars that prevent certain claims from being raised or considered" do not impact whether an application for relief is properly filed. *Id.* The Supreme Court has made clear that "the question whether an application has been 'properly filed' is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar." *Id.* (quoting *Artuz*, 531 U.S. at 9).

Respondents argue that, based on the Maryland Court of Appeals' decision in *Colvin v. State*, 450 Md. 718 (2016), Bell's motion to correct an illegal sentence did not toll the limitations

7

period. Under Maryland Rule 4-345, a motion to correct an illegal sentence may be filed "at any time." Md. Rule 4-345(a). Respondents suggest that Bell's motion to correct an illegal sentence was not properly filed, because his jury unanimity claim was not cognizable under Rule 4-345(a). In *Colvin*, the prisoner argued that the verdict supporting his conviction was not unanimous, "because the jury foreperson was not polled individually after she announced the jury's verdicts." 450 Md. at 723. Colvin asserted this error amounted to an illegal sentence. *Id.* The Court of Appeals held that Colvin's claim was not cognizable in a motion to correct an illegal sentence, explaining that such "procedural challenges to a verdict . . . do not come within the purview of Rule 4-345(a)." *Id.* at 728. Thus, according to Respondents, Bell's motion to correct an illegal sentence did not trigger statutory tolling.

The Court disagrees. When the Court of Special Appeals ruled on Bell's motion to correct an illegal sentence in 2014, prior to *Colvin*, Bell's jury unanimity claim was denied on the merits. ECF No. 25-1 at 133 ("Based on the totality of the circumstances, we are persuaded that the verdict in Bell's case was unanimous."). Even considering the Court of Appeals' subsequent holding in *Colvin* that such a claim is not cognizable in a Rule 4-345(a) motion, that ruling "speaks to the availability of the relief requested rather than the petitioner's ability to initiate the proceedings in the first instance." *Harris*, 282 F. App'x at 242. In *Harris*, a prisoner argued his writ of mandamus tolled the limitations period even though he "was ineligible for mandamus relief because [Virginia] provided another procedural avenue . . . for him to assert his claim." *Id.* The Fourth Circuit explained that "the question of whether mandamus relief was ultimately available to Harris under Virginia law is simply not relevant to determining whether his application for mandamus relief tolled the limitations period under § 2244(d)(2)." *Id.* Similarly, the Court of Appeals' decision in *Colvin* involves a "'condition to obtaining relief,' not a 'condition to filing,' and thus does not

8

render his petition improperly filed for purposes of § 2244(d)." *Id.* Accordingly, Bell's motion to correct an illegal sentence tolled the limitations period and the Court will not dismiss his federal petition as time-barred.

### B. Procedurally Defaulted Claims

Bell concedes that two of his claims, that trial counsel failed to investigate other suspects and that the State failed to turn over a firearms examination report, were never raised in state court. ECF No. 1 at 6. Respondents argue that these claims are thus unexhausted, and that Bell's entire petition should be dismissed on that basis. ECF No. 25 at 14. The Court, however, already ruled in its March 19, 2019 Memorandum Opinion that these claims are procedurally defaulted rather than unexhausted. *See* ECF No. 32 at 6–7. And unlike exhaustion, the Court may resolve a petition containing both defaulted and non-defaulted claims.

A federal court may not address the merits of a state prisoner's habeas defaulted claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 485, 495–96 (1986); *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998). Cause refers to "some objective factor external to the defense [that] impeded counsel's efforts" to raise the claim in state court at the appropriate time. *Murray*, 477 U.S. at 488. Examples of cause include a showing that the factual or legal basis of the claim was unavailable to counsel or that some interference by officials prevented counsel from raising the claim. *Id.* Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

Bell was given the opportunity to explain why the Court should reach the merits of the defaulted claims, and the Court has reviewed Bell's response. *See* ECF No. 34. Neither exception to the procedural default bar applies. As to cause and prejudice, nothing in the record suggests that Bell's procedural default was due to external circumstance. Bell cites to a portion of the hearing on his state post-conviction petition where the Circuit Court entertained the idea of granting a "short continuance" for Bell to file a supplemental petition. ECF No. 34 at 2. Bell argues that failure to grant the continuance prevented him from filing his claims regarding the investigation of other suspects and the firearm report. *Id.* The discussion of the continuance at the hearing, however, was in the context of Bell's claim regarding access to a grand jury transcript. *See* ECF No. 25-7 at 10–11. Rather than requiring a continuance, the Circuit Court allowed Bell to raise this claim for the first time during the hearing. *Id.* at 20–22. Thus, Bell was explicitly given the opportunity to "tell the Court whatever you want the Court to consider" but made no mention of the two claims he now attempts to raise. *Id.* at 20. Bell also presents no new evidence to support a claim of innocence. Where Bell has provided no basis for excusing his procedural default, the Court will dismiss these two claims as procedurally defaulted.

### C. Ineffective Assistance of Counsel Claims

In Bell's petition, he raises several claims that he received constitutionally ineffective assistance from his trial counsel. Such claims are grounded in the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This "right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was

10

deficient, and that the deficient performance prejudiced his defense. *Id.* at 687.

To satisfy the first prong of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687 (citation omitted). Representation is deficient if it falls below an objective standard of reasonableness, considering all the circumstances. *Id.* at 688. The standard for assessing such competence is "highly deferential" and involves a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 669.

The second prong requires the court to consider whether counsel's errors were so serious that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 691–94. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The Court need not appraise the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Id.* at 697.

A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. A petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "There is a strong presumption that counsel's attention to certain

issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 562 U.S. at 109 (internal marks and citations omitted). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### i. Presence During Trial

First, Bell argues his counsel was ineffective for failing to object to Bell's absence during certain aspects of his trial. ECF No. 1 at 6. The Sixth Amendment's Confrontation Clause "gives the accused a right to be present at all stages of the proceedings where fundamental fairness might be thwarted by his absence." *Faretta v. California*, 422 U.S. 806, 816 (1975). Bell contends his trial counsel was ineffective for failing to protect this confrontation right at trial. Specifically, Bell was not present at multiple bench conferences during voir dire when certain jurors were stricken for cause. Further, Bell was absent when several notes were received from the jury, including a discussion between the Circuit Court and counsel over the appropriate responses.

Bell initially raised this claim in his state post-conviction petition. *See* ECF No. 25-1 at 75. At the hearing, the state court dismissed the claim, finding Bell's allegation "without merit" under the *Strickland* standard. ECF No. 25-7 at 150. The state court emphasized that "defense counsel is entitled to exercise appropriate strategy" and that "jurors that were stricken would clearly be patently contrary to the Defendant's interest to have them sit as jurors in this particular case." *Id.* With respect to the jury notes, the state court found the defendant's presence was not essential and that it "was not a critical stage of the proceeding." *Id.*

Respondent argues that the sate post-conviction court properly applied the *Strickland*

12

standard, and that the decision should be upheld under Section 2254(d). The Court agrees. During voir dire, Bell was physically present in the courtroom but did not participate in several bench conferences where his attorney requested jurors be stricken for cause. ECF No. 25-7 at 121. At the state post-conviction hearing, Bell's trial counsel explained that the jurors at issue "definitely would not have been good jurors for Mr. Bell." *Id.* at 122. Bell's counsel determined these jurors should be stricken because "they had some bias or other legal disqualification." *Id.* at 122–23. Moreover, Bell's counsel testified at the hearing that he periodically discussed the potential jurors and sought input from Bell during voir dire. Based on this evidence, the state post-conviction court determined Bell's absence at the bench conferences did not amount to error on his counsel's behalf. There is certainly a "reasonable argument that counsel satisfied *Strickland's* deferential standard" with this strategy. *Harrington*, 562 U.S. at 105. Under the similarly deferential standard of federal habeas review, the state court's finding of no error on the part of trial counsel was a reasonable application of the law. *See also Meyer v. Lanham*, 27 F. Supp. 2d 616, 620 (D. Md. 1998) ("[T]here is no clearly established federal right to be present at bench conferences.").

The same result is warranted with respect to the jury notes. First, the jury asked if they could view the transcript of one of the witnesses. ECF No. 25-1 at 94. The Circuit Court responded, "No, you must rely on your individual and collective memory of the testimony of [the witness] in court." *Id.* The jury next asked whether the parties had stipulated that the defendant was present at the scene of the crime. *Id.* at 95. The Circuit Court responded, "Your recollection controls as to the testimony. All stipulations are in writing and contained in State Exhibits 5 & 6. There is no stipulation that [the defendant] was in the liquor store." *Id.* At the hearing on the state post-conviction petition, Bell's trial counsel testified that the judge would not "send transcripts back no matter what anybody did." ECF No. 25-7 at 126. As to the second note, Bell's trial

counsel argued for the response that was given, ensuring that it was made clear there was no stipulation that Bell was present at the time of crime. *Id.* at 127. Bell's counsel explained that the response to the note was ultimately more favorable to Bell than what the State had suggested. *Id.*

The state court found the notes were not "critical stage[s] of the proceeding," and that trial counsel's decisions were reasonable given the nature of the notes and the responses. *Id.* at 150. Based on this record, the state court's ruling was a reasonable application of the *Strickland* standard. *See also Walker v. United States*, 587 F. Supp. 1043, 1045 (D. Md. 1984) ("Given the confrontation clause's central concern with enabling the defendant to assist with his own defense, a right of 'presence [is not guaranteed where the defendant's] presence would be useless, or the benefit but a shadow.'") (citation omitted).

### ii. Grand Jury Transcript

Bell next asserts he received ineffective assistance of counsel when his attorney failed to obtain a transcript of the grand jury testimony. Bell orally raised this claim at the hearing on his state post-conviction petition. ECF No. 25-7 at 24. The State proffered that "they have no transcript for the testimony of any witness who did testify at trial as a State's witness or as a Defense witness." *Id.* at 18. Rather, the only transcript of grand jury testimony was of Andre Dawkins. *Id.* at 19. Bell argued that he wanted Dawkins' grand jury testimony "for impeachment purposes." *Id.* at 25. When Dawkins failed to appear as a witness at trial, however, Bell's trial counsel explained that "the whole issue became moot." *Id.* at 138.

The state post-conviction court found no error on behalf of Bell's trial counsel in failing to request the grand jury transcript as "no such transcript existed." *Id.* at 150. The state court went on to emphasize that the uncontradicted evidence what "that the only person who testified before the Grand Jury is Mr. Dawkins, and that he did not testify at trial." *Id.* at 151. Without a need to

14

impeach Dawkins using the testimony, the state court found the issue was "moot at best and clearly was within the strategy of defense counsel." *Id.*

There is no clearly established federal right to automatic disclosure of grand jury transcripts. *Dennis v. United States*, 384 U.S. 855, 869 (1966) (recognizing the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts") (citation omitted); *see also United States v. Anderson*, 481 F.2d 685, 692 (4th Cir. 1973) ("The obligation of the Government is merely to make available to the defendant the testimony of a witness before the grand jury at the conclusion of the direct testimony of such witness at trial and then only if the defendant shows a 'particularized need' for such disclosure."), *aff'd*, 417 U.S. 211 (1974). Moreover, the record before the Court suggests that the grand jury testimony in this case would not have supported impeachment, as the sole grand jury witness failed to appear at trial. Accordingly, the state court's denial of Bell's ineffective assistance claim was a reasonable application of federal law.

### D. Jury Unanimity Claim

Finally, Bell asserts he was denied his right to a unanimous jury due to an error in the jury polling procedure. After the jury returned a verdict, the court clerk hearkened the verdict by repeating the finding of guilt on each charge. ECF No. 25-5 at 4–5. The clerk concluded by asking, "and so say you all?," to which the jury responded, "Yes. Yes." *Id.* at 5. Defense counsel then requested that the court poll the jury. *Id.* The transcript reflects that 11 of the 12 jurors were properly polled. *Id.* at 5–6. Bell argues that, because there is no record of polling as to one of the jurors, "the polling was defective and the verdict was not unanimous." *Id.* at 14. Bell raised this claim in his motion to correct an illegal sentence, which was summarily denied by the Circuit Court. ECF No. 25-1 at 125. The Court of Special Appeals affirmed that denial in a written

15

opinion. *Id.* at 126–37.

Respondents contend that there is no clearly established right to a unanimous verdict for conviction by a 12-member jury in a state criminal prosecution. ECF No. 25 at 27 (citing *Apodaca v. Oregon*, 406 U.S. 404, 410–11 (1972)). In response, Bell has moved for a stay pending a decision in a case before the Supreme Court as to whether the Fourteenth Amendment fully incorporates the Sixth Amendment guarantee of a unanimous jury verdict. ECF No. 36 at 2; *see Ramos v. Louisiana*, 139 S. Ct. 1318 (2019) (granting certiorari petition).

Even if the Court determines the Sixth Amendment right to a unanimous jury verdict applies to state prosecutions, a stay is not necessary in this case. Under Section 2254(d)(1), "clearly established Federal law" refers to law at the time of the state-court adjudication on the merits. *See Greene v. Fisher*, 565 U.S. 34, 38 (2011) ("§ 2254(d)(1) requires federal courts to focu[s] on what a state court knew and did, and to measure state-court decisions against this Court's precedents *as of the time the state court renders its decision.*") (internal marks and citation omitted). The Court's eventual holding in *Ramos* has no bearing on what constituted clearly established law at the time of the state court's 2016 ruling on Bell's jury unanimity claim. At the time of the state court decision, there was no clearly established federal right to a unanimous verdict by a 12-person jury in a state criminal prosecution. *See Burch v. Louisiana*, 441 U.S. 130, 136 (1979) (recognizing "that a jury's verdict need not be unanimous to satisfy constitutional requirements") (citing *Apodaca*, 406 U.S. 404).

Moreover, even if there was a federal right to jury unanimity in state prosecutions, the Maryland Court of Special Appeals found that the verdict in Bell's case was unanimous "[b]ased on the totality of the circumstances." ECF No. 25-1 at 133. The state court emphasized that the jurors were properly hearkened, and "there was no objection to the poll which indicates perhaps

an error in the transcription and not a failure to poll all twelve jurors." *Id.*; *see also State v. Santiago*, 412 Md. 28, 37 (2009) ("A poll of the jury serves the same purpose as that of hearkening the verdict.") (citation omitted). Nothing in the record suggests an unreasonable application of clearly established federal law. Accordingly, the Court will deny Bell's motion to stay and his claim based on jury unanimity.

## CERTIFICATE OF APPEALABILITY

When a district court dismisses a habeas petition, a Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner satisfies the standard by demonstrating that "jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773–74 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). When a petition is denied on procedural grounds, the petitioner meets the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because Bell fails to satisfy these standards, the Court declines to issue a Certificate of Appealability. Bell may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

## CONCLUSION

For these reasons, the Court will in a separate Order to follow, DENY and DISMISS the

Petition. A certificate of appealability will not issue. A separate Order follows.

_____12/19/19_____        _____/s/_____
Date                                PETER J. MESSITTE
                                    UNITED STATES DISTRICT JUDGE